Smith, J.[1]
The brigantine Washington, Capt. Ricker, with a cargo of sugar and rum, on her homeward voyage from Surinam to Boston, on Nov. 25, 1800, off St. Lucia, was captured by a French privateer, the Fleur de Mer, of Guadaloupe. The mate and six of the crew of the brigantine were taken out, and six Frenchmen belonging to the privateer put on board, and the brig ordered to make for Basseterre, Guadaloupe. On the morning of the 28th of the same November, after the brigantine had remained about sixty hours in possession of the captors, Capt. Ricker and the libellant (who were the only persons of the former crew on board), having previously concerted a plan for retaking the brigantine, rose upon the captors and mastered them. This rescue happened when the vessel was to the leeward of Dominica and in sight of Guadaloupe. About three o’clock the same day the rescuers carried the vessel to Prince Rupert’s Bay in Dominica, and from thence to Roseau, another port in the same island, where the captain made the protest which is filed in the cause. From thence the captain proceeded, with the brig, to St. Christopher’s, and to St. Thomas’s, and from the latter place to Boston, where the greatest part of. the cargo was sold. The Washington then came to this port (Portsmouth) with the two hogsheads of molasses now -in the custody of the marshal. The brig had been sold by the owners before this suit was instituted. Upon these facts arises the claim of the libellant, if he has any, to salvage.
The owners, Ricker, Lord, and- Rollins, appear on the monition which issued, claim the molasses seized, and say that for any thing set forth in the libel (which comprehends in substance the facts just stated) salvage ought not to be decreed.
Salvage is the recompense paid to persons who have assisted in saving ships or goods from the dangers of the seas, from pirates, or from enemies. 3 Wooddes. 132, n. f.
*435 I. It is contended, in tliis case, that there was no capture by any enemy, and consequently no right to salvage for rescue or recapture.
It must be admitted that a seizure by a friend or neutral, though unlawful and such as may subject the seizors to damages, will not authorize a recapture or rescue. 1 Rob. Adm. 233.
No doubt is entertained in this case, on either side, that the captors acted under the authority of the French Republic. Whether there was, at the time of this capture, such a state of hostility existing between the United States and the French Republic as to raise a title to salvage for American goods retaken from the French is the question. To constitute such a state of hostility, it- is not necessary that there should be a declaration of war on either side. 2 Heinec. 192. Is there a single individual in this country who does not know that, for a long time before this capture, predatory hostilities against our commerce had been carried on by the public and private armed vessels of the French Republic; and that American property, in the French courts, had been uniformly condemned as enemy’s property ?
But what seems decisive on this question is, that the Washington, at this very time, was authorized, by the laws of the United States, to resist search and seizure by French cruisers. Act June 25, 1798, 148. This is a declaration, by the supreme power in this country, that France was not a friendly power ; because, in such cases, it is unlawful to resist search or seizure.
If it was lawful to resist'seizure in this case, it must be lawful to rescue the property seized. Accordingly the same law of Congress provided that armed vessels and merchant vessels of the United States might lawfully recapture vessels taken by the French. Act March 3, 1800, 38; Act May 28, 1798, 120; Act June 25, 1798, 148. It would be absurd to say that the owners might not lawfully do that for them-, selves which others might lawfully do for them.
If the French are not to be considered as enemies, then they are friends. For there is no intermediate state as it *436 respects questions of salvage. And then this rescue is highly reprehensible, and an injury done to the owners, inasmuch as it deprives them of their claim to costs and damages for an unjust seizure and detention. Will the owners, in this case, gravely contend that they have suffered an injury by the doings of Ricker and Kennedy ? And, if they should so contend, where would they find persons credulous enough to believe them ?
But, besides all this, I am clearly of opinion that it is not competent for the owners to set up this defence against the present claim to salvage. Ricker, the other salvor, was himself both an owner and captain. If we may credit him, he was the moving cause of this rescue. Now, in both these capacities, the other owners are bound by his acts. 1 Rob. 232. And it is as much against law as it is against good conscience to suffer them now to object to the necessity and legality of an act which originated with themselves, and in which they bore so considerable a part.
II. But it is said, admitting that there was once such a state of hostility subsisting between the United States and France as to raise a title to salvage, the situation of the two countries was totally changed by the convention signed the third of October last (1800). But this is ascribing too much influence to such an instrument. Notwithstanding the convention, even when ratified on both sides, the hostile character of the two nations may remain the same as before. The convention only imposes an obligation on the two nations, mutually to restore property captured before the exchange of ratifications. But I do not think that the courts of law can take any notice of the treaty till ratified by the supreme power on both sides; any more than they, could take notice of an act of Congress before it is laid before the President for his approbation. Courts of law are bound to decide according to the existing state of things. There is every reason to conclude that the convention will be ratified; yet it may not; and it would be cruel, as it respects the libellant, to dismiss his claim, if otherwise well founded, on a contingency which may never happen.
But I think we may lay all this out of the case, for the rea *437 sons already mentioned. The owners of the Washington are bound by Ricker’s doings. It is too late for them now to elect to consider the French as friends, of to rely on the convention for security of their property. They have chosen a different course. They requested, and they had, the aid of the libellant, at the hazard and peril of his life. And it surely comes with a very ill grace from them, now that the benefit is conferred, and every thing done, and faithfully done, on his part, to refuse him the just recompense of reward. If the danger to which tlieir property was exposed appears less to the owners now that it is past (which is a common case) than it did then, this does not lessen the merit of the libellant’s services. At all events, I think it must be admitted by the owners themselves, by a very moderate exercise of candor, that it is much better for them to have their property restored on a reasonable salvage than to incur the risk of a condemnation before the summary tribunals of Guadaloupe, and, in the event of a condemnation, to seek indemnification from the justice of the French, which has become of as little estimation in modern times as the Púnica jides of ancient days.
The other objections which have been urged against the claim of the libellant I can hardly suppose were expected to have much influence in forming the judgment of the Court.
The right of salvage, in cases of rescue as well as recapture, and the right of mariners to be salvors as well as strangers, are founded on principles of justice and equity, and well established by judicial decisions. 1 Rob. 233, 234.
On this part of the case I have never found myself for a moment inclining to doubt; and I have no hesitation in saying that the causes sot forth in the libel are sufficient, that they are well supported in evidence, and, consequently, that the libel] ant is entitled to a reasonable recompense for his services in effecting the rescue.
This claim is founded on the jus gentium,. 1 Rob. 263, n. I wish the same law which gives the right had laid down some rule to guide my judgment as to the quantum of reward.
If this vessel and cargo had been recaptured by a public vessel of the United States, the salvage would have been one- *438 eighth; if by a private vessel, acting under authority from the government of the United States, one-sixth. Act March 3, 1800, 38.
It is not necessary, in this case, that I should fix the rate or amount of salvage, as Captain Ricker makes no claim. It seems highly equitable that the salvors, in the case of recapture by a private uncommissioned vessel, should receive as much for salvage as if the recapture were made by a private commissioned vessel. And I can see no reason why the rule which prevails in the case of recapture should not be applied to eases of rescue.
In fixing the compensation in this case, I feel that it is my duty to give such a sum as would ordinarily be sufficient to engage reasonable mariners to encounter the peril and danger of the undertaking. 3 Dali. 190. It is for the interest of merchants that I should do so.
It is laid down by writers on this subject, that the character and condition of the person is a fit circumstance to' form a material consideration in distributing the reward. 1 Rob. 151, 239. It is very certain that what would be a suitable and ample reward to one man, for a hazardous enterprise, would be no adequate compensation to another.
Appreciating as well as I can all the circumstances proper for my consideration, I allow the libellant $666. (a) This I consider as a full and adequate compensation for a hazardous enterprise, conducted with skill and courage, and described by the libellant, in his attestation, with laudable modesty. (b)
I sincerely regret that the owners or underwriters (to which-soever it belonged) have not felt themselves bound in honor to do, without compulsion, what I must consider as nothing but an act of strict justice. They might, in this way, have procured for *439 themselves the satisfaction resulting from the bestowment of a reward where it was most justly earned, and, I imagine, at a diminished expense. Viewing the libellant’s claim as just and meritorious,- — -one concerning which sensible men and liberal merchants could not entertain any reasonable doubt, — and not having been informed that any propositions have been made to the libellant which might have prevented this suit, I allow him his costs, (a) , [1]
The money was paid according to this decree.

 Judge Smith was then one of the justices of the United States Circuit Court, and sat, upon this occasion, in the place of the United States District Judge.

 This was about one-third of one-sixth of the value of the vessel and cargo.
The property on the rescue immediately became revested in the former owners; and the rescuers became immediately entitled to their reward, not to any specific part. The benefit conferred is the value of the property when carried to a place of safety. 2 Wooddes. 455;- 2 Burr. 693.

 The libellant was an African. On his examination he discovered great modesty and candor.

 See 2 Rob. 279, The War OnsTcan, Dee. 19, 1799. In point.

 I. In Bas v. Tingy, 1800, 4 Dall. 37, salvage was allowed for the recapture of an American vessel from French captors, and in Talbot v. Seeman, 1801, 1 Cranch, 1, for the recapture of a neutral vessel. In both cases the capturo and recapture occurred in 1799.
II. The convention between the United States and France was concluded Sept. 80, 1800. On Feb. 3, 1801, the United States Senate consented to ratify the convention, provided a certain amendment was made. On July 31, 1801, the French government consented to the amendment, but added a further proviso. “ These ratifications, having been exchanged at Paris, were again submitted to the Senate of the United States, which, on the 19th of December, 1801, declared the convention fully ratified, and returned it to the President for promulgation.” Proclaimed Dec. 21, 1801.
“ Treaties and Conventions between the United States and Other Powers since July 4, 1770.” Washington, 1871.
III. That seamen are entitled to salvage for recapturing their vessel from the enemy was distinctly held in Clayton v. Ship Harmony, 1 Pet. Adm. Dec. 70. See also 3 Kent, Com. 247; Stoky, J., in Williams v. Suffolk Ins. Co., 1838, 3 Sumn. 270, 275.
In 2 Pars. Ship. & Adm. ed. 1809, 317, n. 4, some doubt is expressed on this point: but the case there cited, Phillips v. M'Call, 1821, 4 Wash. C. C. 141, was not a case of forcible recapture, but of ransom.